May it please the Court, my name is Richard Walsh. I represent the appellants in this appeal. This is a challenge to, not the first challenge before this Court, of the City's zoning regulations dealing with advertising signs, and probably not the last. But in my case, I believe I have found a distinction that has not been addressed previously by this Court. The City has alleged that their zoning regulation restrictions on signs are based upon aesthetics and traffic safety. They then turn around and exempt themselves and their tenants from those very same sign restrictions that they impose on private landlords adjacent to the same parks. And I submit that that's Well, the zoning ordinance doesn't apply to the parks, does it? No. They've taken themselves out from under it. But that's a function of state law if it impinges upon the First Amendment. Well, state law says that you don't have zoning ordinances within state parks because of the common good, right? It's common good. There's nothing stopping them from regulating sign content or anything else. They still have the right to do those regulations. Okay. What they don't have the right to do is say, it's okay for me, but it's not okay for thee. Well, that's what happened in Clear Channel, too. In Clear Channel, it was okay for Amtrak, and it was okay for state statutes that allowed Amtrak and Well, I would beg to differ with you that that was the only reason. I have some familiarity with the opinion. I understand, Your Honor, but there was also this particular issue was carved out of the Clear Channel case. It never addressed the city's not regulating sign content inside parks where it regulates them outside the parks. And if I may, if you take a look at the record, if you take a look specifically at the pictures of the photographs of the signs that we have, A265 through A335, you can see that these signs are very, very large, very distracting as you pass by on arterial highways. The city has a sliding scale for how big a sign can be based upon its distance from Well, could the city have a legitimate reason by making the construction project within the park commercially viable to allow advertising on it without violating your client's rights? If the city gives itself the same the right to do something it does takes away from everybody else? No. And that's the problem. What's the simple differentiation that makes it illegal? I think preferring the government's preferred speakers of speech as opposed to private speakers of speech is where it runs afoul of the First Amendment. Notwithstanding the economic necessity of it. Even with the economic necessity of it, there's no indication the city considered the effects of signs or private landlords adjacent to the parks as having any negative impact on the signage inside the park. There were two separate tracks the city undertook, one regulating signs and quite frankly, they pretty much regulated those outdoor signs out of existence. If you drive down the BQE or you drive down the Long You can see the bones of the former signs there. It's just like a graveyard going by. When before you had, for the most part, you had attractive, interesting signs, the city may not agree, but I can't see how allowing some signage along the roadways would defeat the city's purposes of allowing signs inside city parks to benefit its tenants. It's the problem that impacts the First Amendment. New York City is a big place, and this is the only example of exceptional treatment which you were able to find throughout the New York City? No, Your Honor, if I may. Times Square. Look at the entirety of the Times Square area. That's a federal, under federal law, that's considered an arterial highway. It should be subject to the same restrictions on size and everything else that they apply to signs along other arterial highways, but there are no restrictions on those signs. They have, if you go in Times Square any time of the day, and I actually cite in my brief a video showing what Times Square is like, those signs are just as, are worse than the signs my clients had up along the highways that are not allowed to my client, but they're allowed for the city. Again, if the city's position seems to be that if it benefits me, that's okay, but if you want something that's the same as what I have, I'm sorry, you're not allowed to because there's aesthetics. You said in Clear Channel that Central Hudson, given regulation is unconstitutional for Central Hudson purposes on under-inclusive grounds, and that seems to be what you're arguing, only when it materially defeats the whole scheme, and it seems to me that your argument is that unless the city is the same throughout the city, we're dealing with an unconstitutional regulatory scheme, and that can't be right. I'm not exactly saying that, Your Honor. What I am saying is that it's a convenient excuse the city uses to take away the rights of private landlords to use their property the way they want to by having advertising signs and things like that, where in the similar circumstances, the city finds nothing wrong with it when the city agrees with it. This is a government that's sponsoring certain types of speech that it likes, as opposed to allowing other people to have the free marketplace dictate what other types of speech should be out there, and that is what I think is in essence what I'm talking about. They've set up an unfair competition for themselves. They can have advertising signs on their property. My clients can't have it on their property. They can put up signs that... I was in Central Park this morning. I didn't see a single advertising sign in Central Park. Central Park is Central Park. Right, so the city doesn't do it everywhere, does it? They do it in many places, Your Honor. Answer my question. No, they didn't do it in Central Park. They don't do it necessarily in every place. And in some places, they'll have accessory signs. So it's not everywhere, is it? I didn't say it was everywhere. I said everywhere the city does it, Your Honor. So, for example, Times Square, I use that as an example. Herald Square. Again, signage all over the place. Some of it accessory. Some of it's not accessory. Those aren't parks. They're arterial highways, though, Your Honor. Signage allowed for some other reason that I don't think was in the record. Well, I would suspect that Bryant Park would qualify as a park. And Times Square is a landmark. There's a very small park over there. And they've converted some of that area to pedestrian walkways and things like that and made it into a walking park. Again, the question is, if the limitations are on signage within arterial highways and within a certain distance of certain things, that should apply all across the board. But the only park problem that you raise is the ball field. The reason for that one, Your Honor, is because one of my clients actually has a space not far from the ballpark. Oh, so it's like a stone in his shoe. Yes. Okay. Well, sort of. But not exactly, because my client, if you take a look at many of these billboards that are no longer there, my clients actually own those billboards and are not able to use them anymore. So it's more than just the stone in the foot. It's unfair to them. Okay. Thank you. May it please the Court. Jeremy Schwader for the appellees. This appeal raises an issue that was directly presented to this Court in 2010 and was rejected then. The question is, is the city's ban on arterial advertising billboard an unconstitutional restriction on commercial speech because it's under-inclusive in its enforcement? In 2010, Judge Wesley, I know you're very familiar with this. You wrote the opinion. You looked at this. You said the regulations, they're challenged here. You looked at those regulations, and you said the existence of several exceptions did not make it unconstitutional. This is a case that just presents one other exception. That's all it is. The issues, the legal issues, are exactly the same. What they've done is they've come in with one new exception that wasn't part of that case and said, as applied against us, this is now unconstitutional. That is not the case. This single exception that exists on the Met Stadium cannot, as a matter of law, make the entire regulation unconstitutional in its enforcement. The standard for unconstitutional, for under-inclusivity, as this Court knows, there has to be arbitrary distinctions that undermine and counteract the stated objectives of the law. The law has to be so pierced by exemptions and inconsistency that there's little chance that it can serve its purposes. Clear Channel really covers this case in its entirety. The Court there looked at this and said the city's interest in aesthetics and traffic safety, perfectly legitimate. The few exceptions that the Court looked at there said these do not undermine the purpose of the law. The law is still directly advanced. There's really no distinction in this case here. There is a single, we've discussed the public trust doctrine here, and I think you ask questions about it and you understand it. The city cannot go and erect billboards all over its parks. Parks are unzoned, but that doesn't mean that the city can erect billboards. The public trust doctrine covers that. We have a single instance here where there's a legislative endowment which allows the city to do it on the Met Stadium. That single exception does not undermine the law to make it so under-inclusive that it can't serve its purpose. I want to address Times Square for one second because if you look at Appendix H to the zoning resolution, that lists all the arterial highways. Times Square is not an arterial highway. It is not within 200 feet of a park. I don't know this supposed federal regulation that makes it an arterial highway, but it's not an arterial highway under the city's laws. Also, Times Square, and you can look at the original clear channel decision, which discusses how Times Square has been carved out of this because it's a special zoning area that is actually, they want people to build big billboards there because it's a tourist attraction. It's understood that this is a special place where large illuminated billboards are supposed to be. So it's a very different category. I think that there's something else to bring up here, which is as a factual issue, the sign, the only sign that is referenced by my adversary in his complaint is this one that's in Willits Park, very near the Met Stadium Park. That is not even a sign that was regulated under the zoning resolution code that's being challenged here. They sought an accessory sign, which is a sign for on-premises advertising something that was there. They never asked for an advertising sign. They were never barred from erecting an advertising sign due to these regulations. They probably would be if they did it. But what we have here is them applying for an accessory use sign that was denied because the pole they wanted didn't fit the rest of the zoning resolution. So I think that it's an important part of this case that even the as-applied challenge they have fails as to that sign. If there's no further questions, I think this Court is very well aware. Can I just ask, this wasn't really prominent in the briefing, but there has been a decision by the Supreme Court, Reed v. Town of Gilbert, since we wrote Clear Channel. Is there a reason for us to think about writing in this case to discuss Reed and its application in this context? I don't think that this is a case where the Court should get into that area. First of all, it hasn't really been briefed. I think it's complicated. I also think that this Court, post-Reed, has continued to apply the central Hudson test. Also, Reed is really, I think, a different case because it dealt with ‑‑ I read that in applying the central Hudson test, since then we've done that principally in summary orders. Your Honor, I don't necessarily believe that's true. I believe that there are presidential opinions that have applied central Hudson, and maybe I'm thinking more post-Sorrell and maybe not post-Reed as much. So that's possible that I'm thinking pre-Reed, post-Sorrell. But Reed is very different. Reed deals with noncommercial speech. It deals with what it found was content-based regulation. This is not content-based regulation. Clear Channel directly says that. So I think this is a different case. I don't think this is the right case to delve into that, particularly because it just hasn't really been addressed very much. Thank you, Your Honor. I respectfully disagree with opposing counsel about Reed because I did brief it. It's mentioned in my brief. And quite frankly, I quoted from the Supreme Court in that case. I said, A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral in the justification or lack of animus towards the idea contained in the regulated speech. The city distinguishes between accessory signs and advertising signs. That is content-based right on its face. Advertising signs relate to signs advertising businesses not at the premises. An accessory sign represents advertising for stuff on the premises. Metro Media by the City of New York, the Supreme Court said, The fact that the city may value commercial messages relating to on-site goods and services more than it values commercial communications relating to off-site goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others. And that, Your Honor, between Reed and Metro Media is the crux of this case. Just making sure I understand your argument, this is content-based because there's a distinction between a sign that says, This is my shoe store. Correct. And a sign that says, Go to the shoe store down the block. Correct. And you can't say that, I mean, that's exactly the distinction that was made in Metro Media. The city did the same thing. And the Supreme Court said that some of this was not good and sent the case back. I submit that this is the same issue here. They treat accessory signs differently than they treat non-accessory signs. And all of the signs at Citi Field, with the exception of maybe the sign that says Citi Field, are advertising signs and not accessory signs. Thank you. Thank you both.